Present:  All the Justices

SUSIE CAROL BUSSEY

v.  Record No. 050358        OPINION BY JUSTICE DONALD W. LEMONS
                                      November 4, 2005

E.S.C. RESTAURANTS, INC.,
t/a GOLDEN CORRAL

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Charles N. Dorsey, Judge

In this appeal, we consider whether there was sufficient evidence to support a jury verdict for the plaintiff upon her cause of action for negligence and implied breach of warranty and whether the trial court erred in setting aside the jury's verdict.

I.  Facts and Proceedings Below

Susie Carol Bussey ("Bussey") became acutely ill after eating beef tips at a Golden Corral restaurant.  She filed a Motion for Judgment against E.S.C. Restaurants, Inc., t/a Golden Corral ("Golden Corral"), claiming negligence and breach of implied warranty.  The evidence at the jury trial consisted of testimony from both lay witnesses and medical experts.  The jury returned a verdict for Bussey and awarded her $111,765.25 in damages.  Golden Corral filed a motion to set aside the verdict on the basis that the evidence presented at trial was insufficient to prove proximate causation.

1

The trial court granted the motion and cited an "apparent lack of factual basis" for the treating physician's opinion on these questions. The trial court concluded that there is "no proof of a causal connection" outside of the plaintiff's own testimony. Bussey appealed the trial court's order setting aside the verdict.

## II. Analysis

### A. Standard of Review

A trial court is authorized to set aside a jury verdict only if it is plainly wrong or without credible evidence to support it. Jenkins v. Pyles, 269 Va. 383, 388, 611 S.E.2d 404, 407 (2005); Rogers v. Marrow, 243 Va. 162, 166, 413 S.E.2d 344, 346 (1992); Lane v. Scott, 220 Va. 578, 581, 260 S.E.2d 238, 240 (1979). See Code § 8.01-430. This authority is explicit and narrowly defined. Jenkins, 269 Va. at 388, 611 S.E.2d at 407; Rogers, 243 Va. at 166, 413 S.E.2d at 346.

Trial court judges must accord the jury verdict the utmost deference. If there is a conflict in the testimony on a material point, or if reasonable people could differ in their conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given to the testimony, the trial court may not substitute its conclusion for that of the jury merely because the judge disagrees with the result. Id.; Lane, 220 Va. at 581, 260 S.E.2d at 240.

2

Because the jury's function is to determine the credibility of witnesses and the weight of the evidence, and to resolve all conflicts in the evidence, we will reinstate the verdict on appeal if credible evidence supports the verdict. Jenkins, 269 Va. at 388, 611 S.E.2d at 407; Hoar v. Great E. Resort Mgmt., Inc., 256 Va. 374, 378, 506 S.E.2d 777, 780 (1998); Carter v. Lambert, 246 Va. 309, 314, 435 S.E.2d 403, 405-06 (1993); Rogers, 243 Va. at 166, 413 S.E.2d at 346. On appeal, evidence is deemed to be credible unless it is "so manifestly false that reasonable men ought not to believe it, or it [is] shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." Burke v. Scott, 192 Va. 16, 23, 63 S.E.2d 740, 744 (1951). Accord Commonwealth v. McNeely, 204 Va. 218, 223, 129 S.E.2d 687, 690 (1963). In reviewing the evidence, we will accord the recipient of the verdict the benefit of all substantial conflicts of evidence, and all fair inferences that may be drawn from the evidence. Jenkins, 269 Va. at 388, 611 S.E.2d at 407; Rogers, 243 Va. at 166, 413 S.E.2d at 346 (citing Graves, 226 Va. at 169-70, 306 S.E.2d at 901).

### B. Evidence presented at trial

The evidence at trial consisted of lay testimony and medical expert testimony. Bussey testified that she ate lunch with a companion at Golden Corral. The companion's

3

uncontradicted testimony showed that the pair arrived at Golden Corral after 10:30 a.m. Bussey ordered beef tips cooked "well done," but after eating some portion of the meal she complained that the meat "smelled bad." The manager was summoned to her table, and according to Bussey, he stated: "The meat is bad . . . I just told the guy five minutes ago not to cut that piece of meat up in the back, it's no good." Bussey decided to leave without eating anything more.

Her uncontradicted testimony was that she did not eat anything else on the day in question. Further, Bussey could not recall eating anything the day before except a bowl of cereal for breakfast, establishing a period without other food in excess of 24 hours before the meal at Golden Corral.

Later that day she began to experience nausea and diarrhea. The day after she ate at Golden Corral, Bussey was still experiencing gastrointestinal disturbance and she went to the emergency room where she was treated with intravenous fluids and medications. The next day (two days after eating at Golden Corral) she went to her treating physician, Dr. Gaylord, who diagnosed her condition as food poisoning. She was hospitalized for four days.

Additional lay testimony corroborated much of Bussey's version of events. Her dining companion, testifying for the defense, confirmed that Bussey ate beef tips on the day in

4

question and complained about the smell. The restaurant manager recalled Bussey's complaint about the smell and taste of her beef tips.* Bussey's fiancé, whose deposition was read into evidence, personally observed her ill state the evening after she ate the beef tips.

Bussey also presented expert testimony from her treating physician, Dr. Gaylord, who is board certified in internal medicine. He saw Bussey two days after she ate at Golden Corral and diagnosed her symptoms as being caused by staphylococcal food poisoning. Dr. Gaylord based his diagnosis upon a multitude of factors including the history provided by Bussey, review of her medical record from the emergency room, direct observation and evaluation of her symptoms, and the swift resolution of her illness in response to hydration. Additionally, he conducted lab testing that excluded other causes of gastrointestinal distress, e.g. ulcer, gastrointestinal bleeding, pancreatitis. He testified that her symptoms could not have been caused by a casual contact with bacteria such as having dirty hands.

---

[*] Although Golden Corral presented evidence that specifically contradicted Bussey's version of her conversation with the restaurant manager, we are required to give Bussey the benefit of that conflict and consider the evidence in the light most favorable to the party who received the verdict. Jenkins, 269 Va. at 388, 611 S.E.2d at 407; Rogers, 243 Va. at 166, 413 S.E.2d 344 (citing Graves, 226 Va. at 169-70, 306 S.E.2d at 901).

C.  Sufficiency of the evidence

In the context of unwholesome food, the proof necessary to sustain a cause of action based upon negligence or breach of warranty is the same.  "[T]he burden requires the plaintiff to show '(1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands.' "  Harris Teeter v. Burroughs, 241 Va. 1, 4, 399 S.E.2d 801, 802 (1991) (quoting Logan v. Montgomery Ward, 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975)).  The implied warranty of wholesomeness applies to the sale of food by restaurants.  Levy v. Paul, 207 Va. 100, 106, 147 S.E.2d 722, 726 (1966).  With regard to proximate causation where there is no direct proof, the circumstantial evidence must be sufficient to show that the causation alleged is "a probability rather than a mere possibility."  Southern States Coop. v. Doggett, 223 Va. 650, 657, 292 S.E.2d 331, 335 (1982).

In his order setting aside the jury verdict, the trial judge opined that the testimony of Dr. Gaylord lacked a sufficient factual basis, and the remaining circumstantial evidence consisting of lay testimony was insufficient to

support the jury verdict.  We disagree with both of the trial court's holdings.

Certainly, expert testimony is inadmissible if it is too speculative or lacks a sufficient factual basis.  Forbes v. Rapp, 269 Va. 374, 381, 611 S.E.2d 592, 596 (2005); John v. Im, 263 Va. 315, 319-20, 559 S.E.2d 694, 696 (2002); Countryside Corp. v. Taylor, 263 Va. 549, 553, 561 S.E.2d 680, 682 (2002); see Code §§ 8.01-401.1 and -401.3.  According to the trial court, Dr. Gaylord's testimony lacked sufficient factual basis because of "the non-contemporaneous medical examination, the lack of laboratory testing, and the discrepancy in the timeline."  We will address each issue seriatim.

Dr. Gaylord examined Bussey less than two days after the onset of her illness.  At that time, he analyzed the factors discussed in his testimony and reviewed the emergency room report prepared the previous evening.  The essential nature of Bussey's symptoms remained the same from onset of illness until Dr. Gaylord's examination.

Next, the trial court cites the lack of laboratory tests showing the existence of staphylococcal bacteria.  We have never required positive proof by scientific testing to establish a factual basis for medical diagnosis and opinion.  Dr. Gaylord cited a multitude of factors, including laboratory

7

testing that excluded other causes of illness, which contributed to his opinion.  Moreover, he testified that food poisoning is a "fairly common illness" for which scientific testing would not be cost effective, and the "emphasis is on the last meal before the event."  We are satisfied on this point that Dr. Gaylord's opinion was based sufficiently on facts known to him and was not speculative.  Cf. Forbes, 269 Va. at 382, 611 S.E.2d at 597 (excluding expert testimony given "off the top of [his] head").

With regard to the alleged timeline discrepancy, Golden Corral makes much of the two hour difference between Bussey's testimony concerning the onset of illness four hours after eating, and Dr. Gaylord's testimony that "most cases of bacterial food poisoning with manifestations such as hers arise within 6 to 24 hours."  Of course, Bussey cannot rise above her own testimony, Massie v. Firmstone, 134 Va. 450, 114 S.E.2d 652 (1922), but here the suggested conflict merely reflects the difference between symptoms experienced in the general population and those experienced by Bussey in particular, and created a jury issue regarding the weight to be given to the testimony.

For these reasons, we hold that Dr. Gaylord's expert testimony concerning causation had a sufficient factual basis and the evidence was properly before the jury.

8

Turning to the lay testimony, we begin with the proposition that, generally, lay testimony is admissible to prove proximate causation. Todt v. Shaw, 223 Va. 123, 127, 286 S.E.2d 211, 213 (1982) (lay testimony sufficient to raise a jury question even when expert testimony failed to establish causation); Sumner v. Smith, 220 Va. 222, 226, 257 S.E.2d 825, 827 (1979) ("[direct medical] evidence is not a prerequisite to recovery"). In Sumner, we held that testimony of the plaintiff, indirect medical evidence, and the reasonable inferences derived therefrom presented a jury issue as to causal connection. 220 Va. at 225-26, 257 S.E.2d at 827. See also Gwaltney v. Reed, 196 Va. 505, 509, 84 S.E.2d 501, 503 (1954) (plaintiff's testimony of pain occurring soon after an accident was sufficient to raise a jury question on causation). "All that is required is that a jury be satisfied with proof which leads to a conclusion with probable certainty where absolute logical certainty is impossible." Bly v. Southern Ry. Co., 183 Va. 162, 176, 31 S.E.2d 564, 570 (1944). Our holdings in Sumner and Bly are directly applicable here. Cases involving food poisoning present unique circumstances because the primary source of evidence is usually consumed and transmuted in the ordinary course of its use. As a result, most cases will necessarily rely upon circumstantial evidence.

We hold that the lay testimony coupled with the doctor's diagnosis was sufficient to support the jury verdict. Bussey ate only one meal within a 36 hour period, the meal consisted of beef that "smelled bad," and thereafter she suffered a sudden illness that was diagnosed as food poisoning. The evidence is neither speculative nor scant, and the jury verdict naturally follows from fair inferences drawn from the evidence.

The right to a trial by a jury in a civil case is constitutional in origin. Article 1, Section 11 of the Constitution of Virginia provides that in civil suits respecting property interests, "trial by jury is preferable to any other, and ought to be held sacred." A jury's verdict should be set aside only where it is plainly wrong or there is no credible evidence in the record to support that verdict. Such circumstances did not exist in this case.

## D. Conclusion

We hold that the evidence was sufficient to support the jury's verdict and that the trial court erred in setting aside the verdict for the plaintiff and entering judgment for the defendant. Accordingly, we will reverse the judgment of the trial court, reinstate the jury verdict, and enter judgment for the plaintiff, Bussey.

<u>Reversed and final judgment</u>.