484

# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Rogers Electrical
of Virginia, Ltd.

 v.

Jimmy Sims,
David Visocky,
James Waszak,
Elite Service and
Enterprises, L.L.C.,
and Jarrod E. Britt

### Case No. (Civil) CL14-1917

By Judge John W. Brown

### February 13, 2015

The defendants brought for hearing demurrers and pleas in bar to the plaintiff's amended complaint. Following the receipt of briefs from all parties, the presentation of evidence relevant to the plea in bar, and the arguments of counsel, heard on January 5, 2015, the Court denies the plea in bar, sustains the demurrers in part, and overrules the demurrers in part.

*Defendants' Rule 3:11 and 1:4(e) Arguments*

Defendants Elite Service and Enterprises, L.L.C., (Elite) and Jarrod E. Britt (Jeb Britt) maintain that, because their previous demurrer and plea in bar, filed June 23, 2014, included a Rule 3:11 request for reply to all new

matters raised therein, and the plaintiff failed to provide such a reply within twenty-one days, the matters raised by the current demurrer and plea in bar should be deemed admitted pursuant to Rule 1:4(e).

The plaintiff filed a late response on August 15, 2014, arguing that the defendants failed to identify the "new matters" to which a response was requested, and generally denied the plea in bar.

The plea and bar and demurrer were heard by a judge designate of this Court on October 28, 2014, at which time, the Court sustained the demurrer with leave to amend.

The Rule 3:11 argument only applied to previous defensive pleadings, to the initial complaint, which the court has already ruled upon. A new (in name) demurrer and plea and bar are now before the Court. There is a dearth of case law on this particular point, but to require a written denial of the demurrer and plea in bar to the initial complaint in order to survive the filing of such pleadings to the amended complaint is contrary to the purpose of the rules and the equitable principle that a party shall not sleep on its rights. Accordingly, the Court declines to deem admitted such broad defensive pleadings, especially in light of the Rule 3:11 request's lack of specificity.

*Pleas in Bar*

"A plea in bar presents a distinct issue of fact, which, if proven, creates a bar to the plaintiff's right of recovery." *Station # 2, L.L.C. v. Lynch,* 280 Va. 166, 175 (2010) (internal quotation marks omitted). The Court, in this case, heard evidence on the issue and is prepared to rule.

The defendants argue that the plaintiff's claims are barred in this case because the plaintiff is not a licensed contractor and it lost the ability to perform services as a contractor pursuant to Va. Code § 54.1-1106(B). Because the plaintiff did not have a designated employee, and was therefore unable to transact business as a Class A contractor, the defendants argue that their actions could not have resulted in any damage to the plaintiff. In the absence of damages, the defendants maintain that the plaintiff's claims are legally barred.

The plaintiff replies that: (1) Rogers Electrical is not required to have a Class A contractor's license to conduct all of its business, and therefore still could have performed some services, but for the defendants' alleged tortious acts; (2) despite the departure of its designated Class A employee, the plaintiff was entitled to conduct business as a contractor for ninety days and take steps to maintain its Class A license; and (3) the ability of Rogers Electrical to conduct business as a Class A contractor following the defendants' alleged tortious conduct is irrelevant to whether the plaintiff has a viable claim for damages.

Due to the logical structure of the issues, this Court first addresses the abstract question of whether a business is entitled to recover damages,

although it may no longer transact business in the Commonwealth, where the cessation of its business was allegedly caused by the tortious conduct of the defendant.

A survey of other jurisdictions illustrates that the recovery of damages in similar scenarios is permissible. *See, e.g., O'Brien v. State St. Bank & Trust Co.*, 401 N.E.2d 1356, 1358–59 (Ill. App. 1980) (defendant's tortious acts caused plaintiff's business to go bankrupt); *American Oil Co. v. Towler*, 194 S.E. 223, 224–25 (Ga. App. 1937) (plaintiff's business allegedly destroyed by defendant's "blacklisting").

In the Commonwealth, it is established that defunct corporations may sue and be sued in the course of winding up their affairs. *See* Va. Code § 13.1-755. Likewise, tort actions belonging to a deceased plaintiff survive and pass into the decedent's estate. *See id.* §§ 8.01-25; 64.2-519. These principles are naturally reflected in Virginia case law addressing the recovery of lost profits: "When an established business . . . is injured, interrupted, or destroyed, the measure of damages is the diminution in value of the business by reason of the wrongful act, measured by the loss of usual profits from the business." *Banks v. Mario Indus. of Va., Inc.*, 274 Va. 438, 455 (2007) (quoting *Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177, 188 (2006)).

The Court therefore finds that the destruction of the plaintiff's business and inability to legally conduct business as a Class A contractor does not automatically preclude the recovery of damages. Accordingly, the Court need not, at this time, address whether the plaintiff was able to conduct business as a Class A contractor for ninety days, as alleged, following the loss of its designated employee. The defendants' pleas in bar are therefore denied.

### Demurrer to Counts III, V, and VI

In considering a demurrer, "this Court accepts as true the factual allegations of the complaint, its attachments, and the reasonable inferences that follow, but not the pleader's legal conclusions." *Cline v. Dunlora South, L.L.C.*, 284 Va. 102, 106 (2012). To survive a challenge by demurrer, a "pleading must be made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment'." *Eagle Harbor, L.L.C. v. Isle of Wight Cnty.*, 271 Va. 603, 611 (2006) (quoting *Moore v. Jefferson Hosp., Inc.*, 208 Va. 438, 440 (1967)). Rule 1:4(d) states: "Every pleading shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." A complaint must plead "sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law. . . ." *Kitchen v. City of Newport News*, 275 Va. 378, 387–88 (2008) (quoting *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122 (2006)). "[I]t is unnecessary for the pleader to descend into statements giving details

of proof in order to withstand demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993) (citing *Hunter v. Burroughs*, 123 Va. 113, 129 (1918)). A trial court is "not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [Complaint], but only may determine whether the factual allegations of the [Complaint] are sufficient to state a cause of action." *Riverview Farm Assocs. Va. Gen. P'ship v. Board of Supervisors*, 259 Va. 419, 427 (2000).

The defendants argue that the plaintiff's claims for statutory conspiracy, computer trespass, and tortious interference with contractual expectancies are preempted by the Virginia Uniform Trade Secrets Act ("VUTSA"), Va. Code § 59.1-336 *et seq.*, on the basis that these counts arise from the alleged misappropriation of customer lists. These customer lists constitute trade secrets, the defendants argue, and the VUTSA preempts common-law claims entirely based on claims for the misappropriation of trade secrets.

Va. Code § 59.1-341 provides in relevant part:

> A. Except as provided in subsection B of this section, this chapter displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret.
> B. This chapter does not affect:
> 1. Contractual remedies whether or not based upon misappropriation of a trade secret; or
> 2. Other civil remedies that are not based upon misappropriation of a trade secret; or
> 3. Criminal remedies, whether or not based upon misappropriation of a trade secret.

In considering whether Counts III, V, and VI are preempted by the VUTSA, the Court notes that preemption only occurs where the common-law claims "are premised entirely on a claim or the misappropriation of a trade secret." *Smithfield Ham and Prods. Co. v. Portion Pac, Inc.*, 905 F. Supp. 346, 348 (E.D. Va. 1995). In other words, the plaintiff must be able to demonstrate "that the distinct theories of relief sought are supported by facts unrelated to the misappropriation of the trade secret." *Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 833 (W.D. Va. 2008) (quoting *id.* at 349).

Count III alleges a conspiracy among the defendants "for the purpose of using [the] confidential business information and contacts of Rogers to establish a competing entity against Rogers to the benefit of their own economic advantage, and by conspiring to cause all the employees of Rogers to resign [at] the same moment, with no advance notice, and committing other breaches such as their temporarily [sic] removal of equipment from all the trucks and soliciting business or clients prior to their resignation integral listening [sic] other employees to resign. . . ." These allegations are not "premised entirely on a claim for the misappropriation

of a trade secret"; the misappropriation of Rogers's trade secrets is merely a component of the conspiracy. This case is, therefore, analogous to *Wiest*, in which the court held that the plaintiffs' claims were not preempted by the VUTSA; although the plaintiffs cited the misappropriation of trade secrets, their claims were not wholly reliant thereon. *Id.* at 834. The demurrer is consequently overruled.

Count V alleges that "the defendants committed a computer trespass by unlawfully using the computers of Rogers to make unauthorized copies of computer data, namely digitized information concerning the customers of Rogers and also erase computer data, all in violation of Virginia Code § 18.2-152.4." This count does not simply allege the removal of trade secrets from Rogers's computers; it also alleges the erasure of unspecified computer data. The demurrer is overruled.

Count VI alleges tortious interference with contractual expectancies by defendant Elite, incorporating, *inter alia*, the misappropriation of trade secret allegations. In *Wiest*, the plaintiffs' tortious interference claims were not preempted because the plaintiff alleged, in addition to the misappropriation of trade secrets, that the defendants solicited the defection of co-workers. 578 F. Supp. 2d at 834. The tortious interference alleged in the instant case is not solely based upon the misappropriation of Rogers's customers, but rather a coordinated effort to solicit customers, establish a competing entity, resign, create said entity, etc. The demurrer to Count VI is, therefore, overruled with regard to preemption.

### Demurrers to Counts III, V, VI: Failure To State a Claim

The defendants argue that Rogers fails to state a claim for statutory conspiracy because the complaint fails to allege an unlawful act or unlawful purpose that applies to the individual defendants; the only tortious interference count is against defendant Elite. The individual defendants' employment contracts were terminable at will, and a conspiracy count regarding a mass resignation is inadequate as a matter of law. The defendants maintain that the misappropriation of trade secrets cannot serve as the requisite unlawful act for the reasons stated *supra,* and furthermore, that Rogers fails to allege any facts in support of its claim for damages on these counts.

Regarding Count III, in order to state a claim for statutory conspiracy under Va. Code §§ 18.2-499 and 18.2-500, a plaintiff must allege: "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff." *Dunlap v. Cottman Transmission Sys., L.L.C.*, 287 Va. 207, 214 (2014) (quoting *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449 (1984)). "Because there can be no conspiracy to do an act that the law allows, we have held that an allegation of conspiracy, whether criminal or civil, must at least

allege an unlawful act or an unlawful purpose to survive demurrer. In other words, actions for . . . statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." *Id.* at 215 (internal citations in quotation marks omitted). Regarding a wrongful act, in the instant case, the plaintiff has alleged the misappropriation of trade secrets, not standing alone, and the alleged conversion of equipment by the defendants. The defendants' contentions regarding damages are rejected for the reasons stated *supra,* and the demurrers are accordingly overruled.

The demurrers to Count V, the computer trespass count, stand on the basis that Rogers has failed to specify the damages it sustained, yet seeks damages expected to be incurred in the future. The Court finds that, to the extent this count is not preempted, *see supra,* the plaintiffs have generally alleged damages and that, if the defendants require greater specificity regarding these damages, their proper recourse is the filing of a motion for bill of particulars. *See Blue Stone Land Co. v. Neff,* 259 Va. 273, 278–79 (2000) ("The alleged damages, therefore, are those which arise naturally and ordinarily from a breach of contract, they are direct and not consequential, and it was not necessary to plead them specially. . . . If [the defendant] desired more detailed information concerning the damages, he could have requested a bill of particulars."). Therefore, the demurrers to this count are overruled.

The demurrer to Count VI, tortious interference with contractual expectancies, states that the complaint fails to allege any act by defendant Elite that caused or induced a breach of any business expectancy. At most, the complaint alleges that Rogers expected to provide services to its customers in the future, but was prevented from doing so by Elite. The defendant argues that this allegation amounts to nothing more than a subjective belief or hope that the customer relationships would continue.

> Virginia recognizes a cause of action for Tortious Interference with Contract and Tortious Interference with Business Expectancy. While the two distinct torts share common elements, they also each require proof of distinct facts. Interference with Contract is applied to contracts that are not terminable at will. Interference with Business Expectancy is applied to contracts that are terminable at will, to prospective business relationships, or to some type of prospective economic advantage. This cause of action protects relationships or economic advantages that *may* occur in the future. While the two torts share common elements, the distinction is important, one protects a relationship that has been solidified and one protects against undue influence in a relationship or advantage that *may* occur in the future.

*Wright v. Dee,* 87 Va. Cir. 148, 151–52 (Hanover Cnty. 2013).

To successfully state a claim for tortious interference with a business expectancy terminable at will, a plaintiff must plead: (1) a valid business expectancy or contractual relationship; (2) the defendant's knowledge thereof; (3) intentional interference with the business expectancy by the defendant, without which, it is reasonably certain that the relationship would have continued or the plaintiff would have realized the expectancy; (4) the use of improper means or methods to effectuate such interference; and (5) resulting damages. *E.g., Dunlap v. Cottman Transmission Sys., L.L.C.*, 287 Va. 207, 216 (2014); *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 213 (4th Cir. 2001).

The Court's analysis in this case focuses on the first element.

> [P]roof of the existence of the first and third elements of the tort must meet an objective test; proof of subjective expectations will not suffice. In other words, mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action.
>
> [T]he proof must establish a "probability" of future economic benefit to a plaintiff. Proof of a "possibility" that such benefit will accrue is insufficient.

*Commercial Bus. Sys. v. Halifax Corp.*, 253 Va. 292, 301 (1997).

Numerous Virginia cases have held that a mere course of dealing or the holding of a contract terminable at will (or a renewable contract) does not constitute a sufficient basis for the imposition of liability on a tortious interference claim. *See, e.g., id.*; *Moore v. United Int'l Investigative Servs.*, 209 F. Supp. 2d 611, 618-19 (E.D. Va. 2002) ("The evidence of an expectancy must establish expectancy by and between two parties at least, based upon something that is a concrete move in that direction."); *Masco Contr. Servs. East, Inc. v. Beals*, 279 F. Supp. 2d 699, 710 (E.D. Va. 2003) ("[A]lthough Tidewater lists the names of various insulation manufacturers and other supplies, it does not allege that Tidewater had any existing business relationship with any of them in particular. Instead, Tidewater claims generally that Masco East uses its market clout to pressure the entire market into dealing exclusively with Masco East. Even if proven, this would not make out the element of an *existing* contract or business relationship, which is necessary to a successful claim of tortious interference.").

Examining the allegations of the complaint, this Court is unable to find any alleged probability of particular future economic benefit to the plaintiff based on continuous past/existing relationships the plaintiff is now unable to continue; the complaint simply alleges the existence of "a business relationship with customers and clients. . . ." The demurrer of Elite to Count VI is, therefore, sustained without prejudice.

*Demurrer to Count I:*
*Breach of Fiduciary Duty Against Jeb Britt*

The defendant argues that Rogers cannot allege damages resulting from a breach of fiduciary duty because it had no legal authority to act as a contractor after Jeb Britt left its employ. Because the Court rejects the defendants' contentions regarding damages, *see supra,* the demurrer to this count is overruled.

*Demurrers to Counts II and IV*

The defendants maintain that Rogers has failed to properly plead a claim for breach of fiduciary duty, due to an inability to claim damages. For the reasons previously stated, this demurrer is overruled. Likewise, the defendants maintain that a claim for conversion is not properly stated, because the amount of damages is not specified, but are "believed to exceed $125,000." As stated above, the plaintiff is not required to allege the specific value of items converted, and, if the defendant's desires information, their proper recourse is a motion for bill of particulars.

*Demurrer to Punitive Damages and Request for Attorney's Fees*

The defendants lastly maintain that the plaintiff may only recover attorney's fees and punitive damages on the statutory conspiracy count.

Punitive damages are disfavored in the Commonwealth, and are only recoverable in limited circumstances: where the plaintiff demonstrates willful, wanton, intentional, or egregious conduct. *See, e.g., Giant of Va., Inc. v. Pigg,* 207 Va. 679, 685–86 (1967). For instance, allegations of such conduct are sufficient to allow punitive damages for conversion, *see, e.g., Peacock Buick, Inc. v. Durkin,* 221 Va. 1133, 1136–37 (1981), and breach of fiduciary duty and tortious interference, *see, e.g., Advanced Marine Enters. v. PRC, Inc.,* 256 Va. 106, 124 (1998). The Court, therefore, overrules the demurrer to punitive damages.

Attorney's fees are only recoverable pursuant to statute or an agreement of the parties. *E.g., Dowling v. Rowan,* 270 Va. 510, 521–22 (2005) ("We adhere to the 'American rule' which embodies the principle that each litigant must pay his own attorney's fees in the absence of a statute or contractual provision that would shift the burden of payment to the unsuccessful party."). The only statute allowing the recovery of attorney's fees on any of the counts in this case is Va. Code § 18.2-500, which addresses statutory conspiracy. The demurrer is sustained regarding attorney's fees to all counts, save statutory conspiracy

## Conclusion

The Court denies the defendants' pleas in bar, sustains, without prejudice, the demurrers to Count VI and the punitive damages and attorney's fees requests, and, otherwise, overrules the demurrers.

## August 30, 2016

The case was tried before a jury in April 2016. The plaintiff presented evidence of a planned, calculated walkout of all but one employee, along with the removal of all the electrical supplies on each of the Rogers trucks. These supplies, integral to the daily service business of the plaintiff, were dumped in a warehouse. Further, the only person who held the requisite license for Rogers to operate, defendant Jeb Britt, was the orchestrator of the plan. He individually approved the departure of each employee, and offered each a job with his new company, Elite, which started operating the day after the walkout. It was alleged by Rogers that the coordinated effort regarding phone lines, supplies, employees, and customers completely brought the plaintiff to its end after approximately thirty years in business.

At the close of the evidence, the defendants moved to strike on the grounds that there was a lack of evidence to support the damages sought by the plaintiff. The Court denied the motion, and the case was submitted to the jury.

The jury returned a verdict in favor of the defendants on Count II: Breach of Fiduciary Duty, as to Sims, Visocky, and Waszak, and Count IV: Statutory Conspiracy. The jury returned a verdict in favor of the plaintiff on Count I: Breach of Fiduciary Duty, as to Jarrod E. Britt ("Jeb"), and Count VI: Tortious Interference with Business or Contractual Expectancy, as to Elite Services and Enterprises, L.L.C.

The jury awarded, on Count I, $193,800 in compensatory damages and $65,000 in punitive damages, and $1,200 in damages against Elite as to Count VI; defense counsel moved to set aside the verdicts. The Court heard the defendants' motion to set aside on July 25, 2016, following the presentation of briefs, and now renders the following decision.

## Standard of Review

The circuit court's authority to set aside a jury verdict in a civil action is explicit and narrowly defined. *Bussey v. E.S.C. Rests., Inc.*, 270 Va. 531, 533 (2005). Such authority may be exercised only if the verdict is plainly wrong or without credible evidence to support it. *Id.*

If the evidence is "conflicting on a material point, if reasonable persons may draw different conclusions from the evidence," or "if a conclusion is dependent on the weight the fact finder gives to the testimony," a judge may not substitute his conclusion for that of the jury "merely because he or she

would have reached a different result." *Jenkins v. Pyles*, 269 Va. 383, 385 (2005).

### Proper Measure of Damages

The defendants contend that lost profits are the appropriate measure of damages, citing *Saks Fifth Ave., Inc. v. James, Ltd.*, 272 Va. 177 (2006). The defendants argue that there was no credible evidence of lost profits suffered by the plaintiff; the verdict is plainly wrong under *Bussey*, 270 Va. at 620. They allege that the plaintiff relied upon a loss of goodwill value analysis, which is an inappropriate measure of damages, given the facts of the case.

The plaintiff maintains the validity of goodwill as a proper measure of damages, citing *Wood v. Pender-Doxey*, 151 Va. 706 (1928). The plaintiff disputes the defendants' claim that it never alleged a loss of goodwill, and identifies two specific areas in which it maintains that such allegations were made: paragraph 26 of the second amended complaint, which alleged that Rogers had been damaged financially, and paragraph 28, which alleged that Rogers is no longer able to offer contracting services in the Commonwealth of Virginia.

There is no indication that lost goodwill damages must be specifically pleaded; it seems that they are readily analogized to an element of personal injury damages — lost wages, medicals, etc., that need not be specifically pleaded — because such damages are all encompassed in the ad damnum. Only compensatory and punitive damages are required to be separately and specifically pleaded; the individual elements of damages may otherwise be revealed during the discovery process. *See* Rule 1:4; *Harrell v. Woodson*, 233 Va. 117, 122 (1987) (addressing punitive damages).

Damages for loss of goodwill may be recovered if proven. *21st Century Sys. v. Perot Sys. Gov't Servs.*, 284 Va. 32 (2012). Goodwill is deemed an "intangible asset of an established business difficult to describe and impossible of valuing with mathematical precision, but of very real existence and of substantial value." *Id.* at 42. The loss of goodwill has been accepted as an appropriate measure of damages in prior cases. *See, e.g., Wood v. Pender-Doxey*, 151 Va. 706 (1928).

In *Advanced Marine Enters. v. PRC, Inc.*, the plaintiff's expert witness testified that the plaintiff company suffered lost goodwill damages as a result of the departure of its employees to the defendant company. 256 Va. 106, 114 (1998). There, the Court affirmed the award of lost goodwill damages, stating that "the departing group of employees had goodwill value for purposes of maintaining the customer relationships necessary for contract retention." *Id.* at 121, 127.

The plaintiff in *Saks Fifth Ave., Inc. v. James, Ltd.*, failed to establish any relationship between the damages and the defendant's conduct, thus the damages were deemed inappropriate. 272 Va. at 191. The statement relied upon by defendants, "[w]hen an established business . . . is injured,

interrupted, or destroyed, the measure of damages is the diminution in value of the business by reason of the wrongful act, measured by the loss of the usual profits from the business," is not the preclusive holding of the case. *See id.* at 188. Goodwill is certainly a portion of a business's value, and its diminution may be recovered if proven. *See Advanced Marine*, 256 Va. at 114. Although the Court in *Perot* did not ultimately use lost goodwill as the measure of damages, it recognized that it has "obvious . . . value in a given case." 284 Va. at 43.

The plaintiff in the instant case presented evidence of the value of the company and the value of its assets, and used these figures to establish goodwill. Under *Perot*, the Court finds that loss of goodwill was an appropriate item of damages. *See* 284 Va. at 42.

### Plaintiff's Expert Testimony

The defendants contest the legitimacy of the analysis and testimony given by the plaintiff's expert, claiming it was based upon false assumptions and speculation, and therefore should be stricken.

The plaintiff refutes the defendants' speculation surrounding the admissibility of the plaintiff's expert, noting that the defendants waived any objections when they agreed to the admission of his report.

In *Perot*, the trial court abused its discretion by permitting an expert to give opinion testimony based on a model of goodwill damages. 284 Va. at 35. The defendants moved to strike the testimony of the designated expert, and argued that his opinions were "admittedly so speculative and uncertain" that the amount of damages "could not be proven with a reasonable degree of certainty." *Id.* at 37. The Supreme Court of Virginia held that the expert evidence was insufficient, as a matter of law, to support an award of lost goodwill damages. *Id.* at 46.

In the case at bar, even if the expert testimony were excluded, there is nevertheless evidence for the jury to properly consider, to wit, the expert report, to which the defendants waived objection. Any error in the admission of the plaintiff's expert testimony, insofar as it overlaps with the expert report, is therefore harmless. Furthermore, to the extent that the expert testified regarding the sales of comparable electrical businesses, the fact that he could not find businesses that offered services as expansive as those offered by Rogers presumably redounded to the benefit of the defendants.

### Breach of Fiduciary Duty

The defendants dispute the plaintiff's claim for breach of fiduciary duty, arguing that it fails as a matter of law; Rogers lacked the capacity to engage in any business. Virginia law provides that, if there is no corporate opportunity, then there is no fiduciary duty to breach. *Today Homes, Inc. v. Williams*, 272 Va. 462 (2006).

As such, the defendants contend that the punitive damages awarded in regard to the claim are not supported by the evidence, and the jury's verdict for the claim of tortious interference with business expectations should be set aside.

The plaintiff was unable to engage in contracting as a result of the defendants' intentional breach of his fiduciary duty and soliciting the employees to leave. Therefore, the plaintiff argues that its inability to conduct future business is irrelevant; its status is the result of the defendants' tortious conduct.

The Court previously ruled on this issue in its opinion letter dated February 13, 2015; because the Court "rejected the defendants' contentions regarding damages," the demurrer to Count I for breach of fiduciary duty against Jeb Britt was overruled. Likewise, the demurrers to Counts II and IV were similarly overruled. The Court declines to readdress this issue.

## Conclusion

The Court denies the defendants' motion to set aside, as the verdicts are not plainly wrong or without evidence to support them.