# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Stephen Moore

v.

Sheila Flint

Case No. (Civil) CL14-2340

Nancy Vandewater

v.

Sheila Flint

Case No. (Civil) 14-2341

September 24, 2015

BY JUDGE JOHN W. BROWN

This matter is before the Court on the plaintiffs' motion to set aside the jury verdicts and award new trials on the issue of damages only. For the reasons that follow, the Court denies the plaintiffs' motion and enters final judgment in favor of the defendant.

On July 22, 2013, plaintiffs Nancy Vandewater and Steven Moore were rear-ended by the defendant, Sheila Flint, at the intersection of Taylor Road and Bruce Road. The plaintiffs filed actions in the General District Court of the City of Chesapeake and prevailed. The defendant appealed to this Court, which heard a jury trial regarding the issue of damages only on July 28, 2015. At trial, both plaintiffs testified that they were thrown and jolted inside their vehicle, and Moore indicated to his doctors that the collision resulted in a "big impact." Mr. Moore introduced medical bills in the amount of $3,474.94, and Ms. Vandewater introduced medical bills totaling $6,957.42. Although the defendant admitted liability, the jury returned zero dollar verdicts in favor of the plaintiffs.

The defendant presented evidence at trial that she rolled into the back of the plaintiffs' vehicle at a speed of less than 5 mph when her foot slipped off the brake as she attempted to fasten her seatbelt. This testimony was impeached on cross-examination, where plaintiffs' counsel established that the defendant previously stated that she did not know her speed or what she was doing at the time the accident. However, the evidence showed that damage to the vehicles was extremely minor and defendant's alleged impact was to the plaintiffs' trailer hitch. *See, e.g.,* Defendant's Exhibits ## 1, 2.

Ms. Vandewater admitted that she had earlier in her life undergone both lower back surgery and, on March 5, 2013 (4½ months before the accident), upper back surgery. She also testified that, only in her last visit to her doctor, was she released to drive an automobile without limitation. The plaintiff further conceded that she experienced pain the day before the incident and, on the day of trial, two years later, still had back pain, but it was unrelated to the instant collision.

Mr. Moore testified that, as of the time of the impact, he was the front seat passenger and had his left arm extended to his wife, while talking and sitting sideways towards her. The impact made him strike his head, and he immediately felt pain in his shoulder and lower back, which "immediately" went "stiff." He testified that he went to the emergency room, had x-rays taken, received medications, and followed medical directions to use ice and rest for a week. His shoulder pain took two weeks to "fully subside," but, on the day of trial (two years later) he testified that he still suffered back pain. However, he did not claim any lost wages. At the hospital, he told the staff that he had been in thirty prior motor vehicle accidents. At trial, however, he denied that number was accurate and stated, "it is really three or four accidents." When asked why he had told hospital staff that he had been in thirty accidents, Mr. Moore claims that he was still "shook up" and "in a little bit of pain," and just "picked it [the number] out of the air." He further explained that the reason he had stated involvement in so many motor vehicle accidents was his history of "four wheeling" and racing cars at Langley Motor Speedway, but that he had only been involved in three or four motor vehicle accidents "on the road." He testified, however, that none of these prior incidents required medical treatment or involved lawsuits. Finally, Mr. Moore admitted that he is a two-time convicted felon.

With regard to prior damage to the rear bumper of his vehicle, Mr. Moore testified that he never noticed a particular dent on the rear bumper before and that he used the Suburban to pull a 16-foot open trailer.

The plaintiffs now argue that, because the defense offered no evidence in the form of medical records or expert testimony and the defendant testified that she did not have reason to dispute anything in the medical records, they are entitled to compensation for their incurred medical bills. Citing a decision of the Fairfax Circuit Court in *Kian-Pourian v. Perez*, 90 Va. Cir. 276 (Fairfax Cnty. 2015), the plaintiffs maintain that the defendant's failure

to dispute "anything in the medical records," amounts to an admission that the plaintiffs were injured and, as a result, a verdict of zero dollars in damages was inadequate as a matter of law.

This Court reviews a motion to set aside a jury verdict under a highly circumspect standard: the jury's determination will "only be set aside if it is plainly wrong or without credible evidence to support it." *E.g., Condominium Servs. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 579 (2011).

> Trial court judges must accord the jury verdict the utmost deference. If there is a conflict in the testimony on a material point, or if reasonable people could differ in their conclusions of fact to be drawn from the evidence, *or if the conclusion is dependent on the weight to be given to the testimony,* the trial court may not substitute its conclusion for that of the jury merely because the judge disagrees with the result.

*21st Century Sys. v. Perot Sys. Gov't Servs.*, 284 Va. 32, 41–42 (2012) (quoting *Bussey v. E.S.C. Rests., Inc.*, 270 Va. 531, 534–35 (2005)) (emphasis added).

The instant case is readily distinguished from the authority cited by the plaintiffs. The circuit court in *Perez* relied on the agreement of the defendant's expert that the plaintiff wife was injured in the subject accident in order to set aside the jury verdict. *Kian-Pourian v. Perez, supra.* However, the evidence before the Court in the case at bar contains no such agreement. Rather, the defendant herself stated that she had no reason to dispute anything in the medical records, but could not say whether the plaintiffs were injured from the accident, testifying, "I am not a doctor, so I cannot say whether they were or they were not."

The plaintiffs bear the burden to prove that the injuries for which they claim damages are "properly attributable to the accident." *Smith v. Wright,* 207 Va. 482, 485 (1966) (quoting *Diggs v. Lail,* 201 Va. 871, 876 (1960)). The jury is free to accept or reject the plaintiffs' evidence.

In *Mastin v. Theirjung,* 238 Va. 434, 435–37 (1989), for instance, the jury returned a zero dollar verdict in favor of the plaintiff upon evidence that the subject collision was not severe and that her treating doctors relied upon her exaggerated description of the accident in making their diagnoses. "[A]s the sole judges of the weight and credibility of the evidence, the jury could also have concluded that it was equally likely that Mastin's difficulties either arose from some other cause unrelated to the trauma of the collision or were feigned, and thus that Mastin failed to carry her burden of proving causation." *Id.* at 438–39.

The result in the case before this Court is substantially the same. "[W]here an impartial jury properly instructed has determined the issue of damages in a personal injury case, the verdict should not be disturbed if

it is supported by a logical interpretation of the factual issues." *Cosby v. Clem*, 290 Va. 1, 3, 773 S.E.2d 159, 161 (2015) (quoting *Doe v. West*, 222 Va. 440, 445 (1981)).

The credibility of the witnesses, the reliability of their testimony, the scope of the damage to the vehicles, and the pre-existing conditions of Ms. Vandewater, as well as the continued injury claim of Mr. Moore, were all matters for the jury. *See, e.g., Mastin*, 238 Va. at 435–37. The plaintiffs' motion to set aside the jury verdict is, therefore, denied, and this Court will enter the previously submitted final order, additionally noting the ruling of this letter opinion.